*650
 
 PER CURIAM.
 

 Appellants,
 
 [1]
 
 plaintiffs in a medical malpractice action, appeal an adverse jury verdict and the trial court’s denial of their motion for new trial. They argue that the trial court erred by not allowing them to use their remaining peremptory challenges to backstrike members of the original jury after the alternates were chosen. They also contend the exclusion of their expert’s testimony, Dr. David Benditt [“Dr. Ben-ditt”], gave an unfair advantage to Cardiovascular Associates of Lake County, P.A. [“Appellee”], defendant below.
 
 [2]
 
 Because of the trial court’s error in jury selection, we reverse.
 

 In 2002, Angela Szymanski [“Angela”], thirty-six years old at the time, was experiencing life threatening syncope (temporary loss of consciousness). Dr. Cacodcar, her treating cardiologist, was unable to determine the cause of syncope. Dr. Cacodcar referred Angela to Dr. Bryce, who determined the syncope was caused by periods of very low heart rate. Dr. Bryce implanted a pacemaker into Angela’s heart to prevent further episodes. Angela thereafter went to Dr. Bryce’s office for a followup visit. While there, a Medtronic technician performed an interrogation
 
 [3]
 
 of the pacemaker, showing that there was a decreased response in the right arterial lead. Dr. Bryce advised Angela that it would be necessary to re-interrogate the pacemaker in approximately four weeks. He explained that it is normal for some leads to be ineffective for some time after implantation due to inflammation. Dr. Bryce advised her either to follow-up with him or return to Dr. Cacodcar.
 

 She followed up with Dr. Cacodcar, who wrote Dr. Bryce a letter informing Dr. Bryce that the pacemaker was functioning normally. On July 10, 2003, Angela returned to Dr. Cacodcar’s office and underwent another interrogation by a Medtronic technician, which again revealed that the right arterial lead was not working properly-
 

 Approximately three months later, Angela suffered a debilitating stroke, which left her permanently injured and totally disabled. While in the hospital, a transesophageal echocardiogram was performed, which revealed that the right arterial lead had moved through the septum, separating the atriums and had become lodged in the left atrium. Dr. Anne Curtis, Angela’s treating physician at the time, concluded that the stroke occurred when a blood clot formed on the tip of the lead while it was in the left atrium. She believed that the clot traveled to Angela’s brain causing an embolic stroke. Appellants’ contention at trial was that Dr. Bryce, as an employee of Appellee, was negligent either in placing the pacemaker lead in the left atrium or in failing to ascertain the cause of the pacemaker malfunction.
 

 During voir dire and after the selection of the initial six jurors, there was a discussion about whether Appellants could use their two remaining peremptory challenges to backstrike members of the initial panel after selection of the two alternates. The
 
 *651
 
 following exchange on the subject took place between counsel for Appellee and the trial court:
 

 Mr. Hurt: Can I be heard before you do the alternates?
 

 Court: Yes.
 

 Mr. Hurt: And I’ve had this experience happen before, where we embark upon selecting the alternates, and then we get done with that process, the Plaintiff then attempts to back-strike on the original six. So I know that, but the appellate law seems to suggest that, you know, maybe that’s permissible. So I would ask that those six people be brought in, you swear them in, and then we embark upon selecting the alternates. Because I don’t want any backstriking on these six by either side.
 

 Court: Here’s the problem with that, is that the two people I bring in separately will know they’re the alternates. And we’ve had to replace jury members with alternates, and if I were an alternate on the jury panel, I wouldn’t pay attention to anything because I know I don’t get to deliberate. So I appreciate what you’re saying—
 

 At that point, Mr. Hurt suggested the parties stipulate that there would be no backstriking of the initial six jurors. Appellant’s counsel, Mr. Clark, would not stipulate. He stated: “I’m just going to follow the law as it is and I understand it, that I can strike up to the time that the jury is sworn.” Then the following occurred:
 

 Mr. Hurt: That’s the problem, Your Honor. That’s the game I’ve run into before. And I don’t think it’s appropriate to do that. Because they’re using strikes that they still have in their pocket on the original six once they see what happens downstream with the alternates. And I don’t know that there’s an appellate case on point, but I don’t think it’s the intent that we agree on our six and then embark upon selection of alternates and then go back and try to strike one of the original six. I think that we need to either agree and stipulate that game will not be played or I ask that these six be brought in and be sworn, which is exactly what I did in my last month-long trial in September where the same game was attempted, and the Judge asked the Plaintiff, are you going to do that? And the Plaintiff lawyer said, well, I don’t know. And the Judge brought in the six and swore them in. So that’s my position, for the record.
 

 Mr. Clark: Well, I don’t know what case he was on, but the law says exactly the opposite. And I don’t play games. I’m not — I’m here about the law and the courtroom as opposed to some game.
 

 The Court: Well, I think the problem is, is that we’re now to select a panel and we’re about to select two alternates for that panel. And I guess the concern is that there’s going to be back-striking from one side as to jurors that are on the original six panel, correct?
 

 Mr. Hurt: I’m very concerned about it, because that’s going to impact my tactical decision making with respect to what goes on with the alternate selection. And I don’t think it’s appropriate — and, again, I’m not suggesting it’s a game. I didn’t mean to suggest it’s a game. It’s a tactic. And, you know, I don’t think it’s an appropriate tactic under the appellate law, but I don’t know that there’s ever been a case that talks about that.
 

 Mr. Clark: Well, I think the case is that I can backstrike up until the time the
 
 *652
 
 jury is sworn and I think that’s what the case law says. I’ll go look it up. Maybe Mr. Hurt has one of his—
 

 The Court:- I don’t think Mr. Hurt disputes that’s the law. I think Mr. Hurt is requesting that I swear the panel in now so it doesn’t happen, right?
 

 Mr. Hurt: Yes.
 

 Mr. Clark: It’s his tactics, how about my tactics? You know, I think that the instance, that I’m going to track the law, as to what I can and cannot do, at this point in time we have six and we’re now looking at picking two alternates, if I understand correctly, and we have one challenge each.
 

 Mr. Hurt: Your Honor, I understand your concern that if you bring the six in, you swear them in, then the two alternates realize they’re alternates and perhaps they don’t pay attention. I think that isn’t necessarily accurate, but perhaps it could be accurate, but we can avoid this whole dilemma we find ourselves in by swearing in these six and moving on. It will shorten the process. Then we each select the two and move on. Otherwise, what’s going to happen is we’re going to be striking alternates downstream and then he’s going to go backward and fill in alternates into the original six, and I don’t think that’s appropriate.
 

 Mr. Clark: Well, there’s an appellate case — I didn’t know Mr. Hurt would . bring it up in his game plan, if you will. But there is an appellate case that says you can’t do that.
 

 The Court: Once the jury is sworn.
 

 Mr. Clark: To swear in the six and then pick alternates.
 

 Mr. Hurt: I’ve never seen that case.
 

 The Court: I, frankly, don’t know what the law is. I’d have to see the law. I’ve never had this come up before. Last time we picked a jury, it didn’t happen.
 

 Mr. Hurt: I’ll tell you, in my experience in doing this, it’s never happened until the last year or two when I’ve had a couple ... I brought it up in advance with the Court, just like I’m doing now, and the Judge brought the six in and swore them in and then that solved the problem. So it forces the plaintiff to use his peremptories now on these six or not. That’s what it forces. And then we can select the alternates and we can move to opening statements.
 

 The Court: Well, let me ask the Plaintiff this: You have a choice, I’ll either ask if you stipulate that you’ll agree not to backstrike any of the six and we’ll go ahead and pick the alternates or I’ll bring the six in and impanel them.
 

 [[Image here]]
 

 The Court: I’m just asking, do you agree that you’re not going to go back and backstrike then I don’t need to do it.
 

 [[Image here]]
 

 The Court: I understand the concern of the other side. I will avoid that by either swearing in the six, so that is our panel and that can’t be backstricken or ask that you’ll stipulate not to backstrike the original six.
 

 Mr. Clark: Well, Judge, you’re asking me to do something as a plaintiff that I know the law doesn’t support.
 

 The Court: I’ll bring in the panel. We’ll swear them in then.
 

 Mr. Clark: But then you’re announcing that we have two alternates and who they are.
 

 [[Image here]]
 

 Mr. Hurt: [A]nd if the tactic is they want to see who the two alternates
 
 *653
 
 are going to be so they can backstrike one of the six to have the first alternate back fill into the six, then we’re going to be in the dilemma of picking yet another alternate. That’s what will happen. That’s exactly what I think to be inappropriate.
 

 [[Image here]]
 

 The Court: Well, I agree, but I don’t know what else to do other than I’ll bring them in, swear them in. Obviously the two alternates will know they’re alternates. Frankly, I wasn’t going to tell the alternates at all. I never tell them.
 

 [[Image here]]
 

 The Court: All right. Go ahead and bring the jury back up.
 

 [[Image here]]
 

 Mr. Blanchard: Your Honor, give us just a second to figure how we can avoid that but not waive our objection? That’s my stickler right here. I think that we’re going into Never Never Land by these two alternates knowing they’re alternates. It could jeopardize my client’s rights to have attentive jurors.
 

 Now, we object to this procedure. It seems like we’re being forced into a tactic that we, candidly, believe we have a right to do if we want to do it, legally, we’re supported. So we’d like to object to it. But if we object to it, it forces us into a situation where we may have two inattentive jurors, sort of like devil in the deep blue sea, between a rock and a hard place.
 

 The Court: You can avoid it by agreement not to backstrike the original six.
 

 Mr. Blanchard: Well, I know, that Your Honor, but we’re waiving what we think is a legal right. We may be wrong, but we’re being forced to waive a legal right. And that’s our concern.
 

 Mr. Hurt: [T]he only reason they don’t want to use one of their two remaining strikes on the original right now is because they want to see who they end up with as alternates who will back fill into the original six. That’s the tactic. And I don’t think that’s behind the spirit and meaning of the appellate law when it comes to this issue.
 

 And, otherwise, they wouldn’t be arguing so strenuously about it. I mean, right now, let them use one of their two or two of their two peremp-tories on these six people and let’s get ourselves a jury and then move onto the selection of the alternate jurors.
 

 The Court: Well, let’s assume we weren’t picking alternates, that’s exactly how it would be done. We’re only picking alternates because of the length of the trial. And I will bring six in and swear them in, unless there’s some stipulation that there will be no backstriking.
 

 I understand that puts you all in a box but I’m in a box. All right?
 

 Mr. Clark: Judge, predicated upon your ruling and forcing us into the position—
 

 The Court: I’m not forcing [sic] into any position.
 

 Mr. Clark: I mean, to tell me that I can’t—
 

 The Court: Unless /all stipulate not to backstrike, both sides, then I’ll bring the six in here and swear them in.
 

 Mr. Clark: Well, I want to protect my record, Judge, as you know, being into a situation of stipulating has some connotations to it, to waive the rights that we believe that we have. But, in essence, for me to say that I won’t use my backstrikes is going to force us
 
 *654
 
 into a position to have two alternates here that are going to know they’re alternates. Because of that, and we all know that people get sick, we have one lady that has a condition, it could happen and we’ll have to have the alternates. We want them all to pay attention. So in that regard, over my objections, I mean, like and protecting my record, we’ll go forward with the picking of the two alternates without backstriking, based upon the only alternative I have is to lose my rights that I believe the appellate decisions give me.
 

 [[Image here]]
 

 Mr. Hurt: So I’m clear, Your Honor, that was a stipulation by the Plaintiff that they’re not going to use one of or both of their two remaining peremptory challenges in backstriking as to the six jurors that we have at the present time?
 

 The Court: That’s correct. Mr. Clark, is that right?
 

 Mr. Clark: No sir, I did not stipulate. I said I would agree to the Court’s ruling but I was not going to stipulate and give up my rights on an appellate record if I stipulate to something. But I will agree not to backstrike based upon the alternatives that I have of either going forward and swearing the six and the two alternates.
 

 The Court: You’re agreed not to back-strike any of the original six?
 

 Mr. Clark: Correct. I’ve agreed not to do it predicated upon what you’ve told me is going to happen.
 

 The Court: Mr. Hurt, the Defendant also agrees not to backstrike any of the original six?
 

 Mr. Hurt: Yes, Your Honor, we agree.
 

 After the parties picked the two alternates, and prior to the court swearing in the jury, Appellants objected to the panel as a whole: “Your Honor, based upon the procedure ... I have to object to the panel as a whole, because of the stipulation situation we got into. So, for the record, the Plaintiff objects to the panel as a whole.” The jury and the two alternates were then sworn in and the trial began. The jury returned a verdict in favor of Appellee, and this appeal followed. On appeal, Appellants correctly argue that the trial court’s refusal to allow them to exercise their peremptory challenges before the jury was sworn is reversible error.
 

 Florida Rule of Civil Procedure 1.431(b) authorizes the judge and trial counsel to question prospective jurors on voir dire. The purpose of the voir dire examination is to assure the right to a fair and impartial trial by qualified jurors.
 
 See Ritter v. Jimenez,
 
 343 So.2d 659 (Fla. 3d DCA 1977). Rule 1.431(f) is explicit: “No one shall be sworn as a juror until the jury has been accepted by the parties or until all challenges have been exhausted.” The Committee Notes on the rule explain the reason for subsection (f):
 

 Subdivision (f) has been added to ensure the right to “back-strike” prospective jurors until the entire panel has been accepted in civil cases. This right to back-strike until the jurors have been sworn has been long recognized in Florida.
 
 Florida Rock Industries, Inc. v. United Building Systems, Inc.,
 
 408 So.2d 630 (Fla. 5th DCA 1982 [sic]). However, in the recent case of
 
 Valdes v. State,
 
 443 So.2d 223 (Fla. 1st DCA 1984)[sic], the court held that it was not error for a court to swear jurors one at a time as they were accepted and thereby prevent retrospective preemptory challenges. The purpose of this subdivi
 
 *655
 
 sion is to prevent the use of individual swearing of jurors in civil cases.
 

 Because a juror may be peremptorily challenged until he is sworn, and the trial court may not swear the jurors piecemeal, it was wrong for the court to rule that such was the procedure it would follow unless the plaintiff agreed not to backstrike.
 
 Tedder v. Video Elec., Inc.,
 
 491 So.2d 533, 534-35 (Fla.1986);
 
 Florida Rock Indus., Inc. v. United Bldg. Sys., Inc.,
 
 408 So.2d 630, 632 (Fla. 5th DCA 1981).
 

 It has been held repeatedly that the trial court’s failure to allow a party to exercise a remaining peremptory challenge before the jury is sworn constitutes reversible error.
 
 Van Sickle v. Zimmer,
 
 807 So.2d 182, 184 (Fla. 2d DCA 2002);
 
 Fla. Rock Indus.,
 
 408 So.2d at 632. The trial court’s refusal to permit a party to exercise its peremptory challenges is not harmless error when the jury returns a verdict against that party.
 
 Saborit v. Deliford,
 
 312 So.2d 795, 797-98 (Fla. 3d DCA 1975).
 

 This Court has held that disallowing the exercise of a peremptory challenge by way of a backstrike, prior to the jury being sworn, is reversible error per se.
 
 Peacher v. Cohn,
 
 786 So.2d 1282, 1283 (Fla. 5th DCA 2001). In
 
 Peacher,
 
 this Court found per se reversible error where the trial court refused to permit a plaintiff to use a peremptory challenge to backstrike a juror after the parties began selecting an alternate juror prior to the jury being sworn.
 
 See also Van Sickle
 
 at 184-85. Here, the trial court’s refusal to allow Appellants to backstrike any of the first six jurors was error.
 

 On appeal, Appellee offers no substantive defense of the procedure it convinced the court to employ. Rather, affirmance is urged on the basis that Appellants either failed to preserve the error for review, or waived the error by failing to attempt to exercise a preemp-tory challenge of one of the six panel members after the alternates were selected. For this proposition, they rely on cases such as
 
 Tedder,
 
 491 So.2d 533
 
 Gonzalez v. Martinez,
 
 897 So.2d 525 (Fla. 3d DCA 2005), and
 
 Griffin v. State,
 
 502 So.2d 1350 (Fla. 2d DCA 1987), but these cases have no application in a case like this one. Here, at Appellee’s instance, the court adopted a procedure that deprived Appellants of a valuable right by offering them only two choices, neither of which was proper. One of these choices required Appellants not to exercise a challenge of any of the first six jurors. The other required a piecemeal swearing of the jury. While objecting volubly and consistently, Appellants did as was required by the court by selecting one of the only two objectionable options they were given: they agreed not to exercise a backstrike of any of the first six jurors. They did, however, object to the entire panel based on the procedure employed to select it. We reject the proposition that Appellants waived their vehement objection by adhering to the promise they were forced into making. The judgment is reversed and remanded for a new trial.
 

 REVERSED and REMANDED.
 

 GRIFFIN, SAWAYA and LAWSON, JJ., concur.
 

 [1]
 

 . Angela Szymanski, Dwayne E. Szymanski, her husband, individually and as parents and natural guardians of Alyssa K. Szymanski, a minor, and Josiah R. Szymanski, a minor [collectively "Appellants”].
 

 [2]
 

 . Also named below as co-defendants were Dr. Miguel Bryce ["Dr. Bryce”], Dr. Surexha Cacodcar ["Dr. Cacodcar”], and Medtronic, Inc. ["Medtronic”]. Prior to trial, Angela settled with all of the defendants except Cardiovascular Associates.
 

 [3]
 

 .This is done by determining whether or not a shock is being received by the heart, called a capture, and how much voltage it takes to get that capture.